VIRGINIA D'ADDARIO *v.* DAVID D'ADDARIO, EXECUTOR
(ESTATE OF F. FRANCIS D'ADDARIO), ET AL.
(10228)

O'CONNELL, NORCOTT and FOTI, Js.

Argued December 6, 1991—decision released March 3, 1992

*Philip Baroff,* for the appellants (defendants).

*Allan M. Cane,* for the appellee (plaintiff).

FOTI, J. This appeal arises out of the conveyance of an estate in land by quitclaim deed from F. Francis D'Addario (the grantor) to his daughter (the plaintiff). After the grantor's death, the plaintiff brought this action to quiet title of the property. The trial court determined that the plaintiff owned the property in fee

simple absolute. The defendants[1] now appeal that decision, claiming that the trial court improperly found (1) that the estate conveyed to the plaintiff was a fee simple subject to condition subsequent, (2) that the power of termination remaining in the grantor was personal to him, and (3) that after the grantor's death the plaintiff owned the land in fee simple absolute. We affirm the judgment of the trial court.

The undisputed facts are as follows. In December, 1982, the grantor executed a quitclaim deed of conveyance that provided: "Releasor grants all of the above described real property to Releasee for so long as and upon the condition that Releasee shall use the premises as her principal residence. In the event that Releasee does not use or ceases to use the above described real property as her principal place of residence, the above described real property shall automatically revert to Releasor or his heirs and assigns upon the recording by Releasor of the Affidavit attached hereto as Schedule B and it shall not be necessary for Releasor or his heirs or assigns to take any further action to effectuate the reverter."

Attached to this deed was an affidavit form that, when recorded, would terminate the interest conveyed by the deed. This affidavit was never recorded. The affidavit form provided: "The undersigned being duly sworn, hereby deposes and says as follows:
"1. That he is the Releasor under a certain Quit Claim Deed to Virginia D'Addario as the Releasee, dated December 31, 1982 and recorded in volume _____ at Page _____ of the Land Records of the Town of Trumbull.
"2. That under such Quit Claim Deed Releasor granted certain real property described therein to

---

[1] The defendants are the executors of the grantor's estate and the trustees of the testamentary trusts under his will.

Releasee for so long as and upon the condition that Releasee should use the premises as her principal place of residence, and furthermore, that if Releasee did not use or ceases to use the real property as her principal place of residence said real property would automatically revert to Releasor and his heirs upon the filing of this Affidavit in the Land Records of the Town of Trumbull.

"3. That to the best of the undersigned's belief and knowledge, said Releasee has ceased to use such real property as her principal place of residence as of _____ and this Affidavit is being recorded to effectuate the automatic reverter of the real property to the undersigned."

The trial court found that the grantor envisioned a family compound around his Trumbull home. Prior to executing the quitclaim deed, he spoke with the plaintiff about her taking up residence at 75 Williams Street, a piece of property next to his home. She told him that she would move in only if he would give her title to the house. During their discussion, the grantor indicated that he would not do so. He told the plaintiff, "This property won't be yours until I die." Nevertheless, the grantor executed the above deed, conveying an estate in the property to the plaintiff. The plaintiff, however, was unaware of the conveyance until after her father's death on March 5, 1986.[2] The plaintiff never resided at 75 Williams Street and the trial court found that the grantor knew that the plaintiff never resided there. The trial court also found that the grantor knew that on the town land records, title to the property was in the

---

[2] Although the defendants do not dispute that delivery occurred, it is noteworthy that the trial court found delivery, even though the plaintiff was unaware of the conveyance until her father's death. The trial court also pointed out in the memorandum of decision that the plaintiff's actions after she discovered the conveyance, namely paying taxes on the land and bringing this action to quiet title, indicate her acceptance.

plaintiff's name. Additionally, the grantor paid certain bills on the property that were addressed to the plaintiff as title holder.

During his lifetime, the grantor never recorded the affidavit attached to the quitclaim deed. Subsequent to the grantor's death, the defendants, as trustees under the grantor's will, attempted to exercise the power of termination by executing and recording a similar affidavit on the Trumbull land records. This affidavit conformed to the one attached to the quitclaim deed. The defendants recorded this affidavit to effectuate the grantor's right of reentry and to terminate the plaintiff's interest in the land. In response, the plaintiff brought this action to quiet title.

The trial court found that the estate conveyed to the plaintiff by the quitclaim deed was a fee simple subject to condition subsequent with a power of termination in the grantor. The court further found that according to the language of the deed, the power of termination was personal to the grantor. Thus, when the grantor died, the power of termination was extinguished and the plaintiff became the owner of the property in fee simple absolute. We agree with the trial court.

We begin our analysis by laying out the appropriate standard of review. "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980);

*McClintock* v. *Rivard,* 219 Conn. 417, 426–27, 593 A.2d 1375 (1991). In this case, the defendants challenge the legal conclusions of the trial court.[3]

I

The defendants first claim that the trial court improperly concluded that the grantor conveyed a fee simple subject to a condition subsequent to the plaintiff. At oral argument, the defendants asserted that the plaintiff's taking up residence at 75 Williams Street was a condition precedent and that because she never occupied the premises, no present estate ever vested in her. The defendants assert that at most, the plaintiff holds a life interest in the estate. Resolution of this issue turns on whether there was a present estate conveyed to the plaintiff and whether an estate remains vested in her. The narrower issue is whether the plaintiff's residency was a condition precedent or a condition subsequent to title vesting in her. " 'If the act or condition required [does] not necessarily precede the vesting of the estate, but may accompany or follow it . . . then the condition is subsequent.' " *Lewis* v. *Lewis,* 74 Conn. 630, 634, 51 A. 854 (1902). An estate in fee simple subject to condition subsequent requires that the grantor take an affirmative action to divest the grantee of her estate. *Oldfield* v. *Stoeco Homes, Inc.,* 26 N.J. 246, 254–55, 139 A.2d 291 (1958). On the other hand, a condition precedent is one that must be performed before the estate can vest. *Warner* v. *Bennett,* 31 Conn. 468, 475, (1863).

The relevant language of the deed here is: "Releasor grants all of the above described real property to Releasee for so long as and upon the condition that Releasee shall use the premises as her principal residence. In the event that Releasee does not use or ceases

---

[3] We note that the defendants do not challenge the factual findings of the trial court.

to use the above described real property as her principal place of residence, the above described real property shall automatically revert . . . ."

In determining whether this language creates a condition precedent or a condition subsequent, we recognize that "[i]t is a well established principle of construction that wherever possible each part of the scrivener's phraseology should be given some import." *Peckheiser* v. *Tarone,* 186 Conn. 53, 59, 438 A.2d 1192 (1982). "Every word, sentence and provision, if possible, is to have effect, and a construction which requires rejection of an entire clause is not to be admitted . . . ." 23 Am. Jur. 2d, Deeds § 227. Ambiguous deeds are construed in favor of the grantee and strongly against the grantor. *Sweeney* v. *Landers, Frary & Clark,* 80 Conn. 575, 579, 69 A. 566 (1908).

The defendants argue that the deed makes clear that no interest was transferred to the plaintiff unless and until she occupied the property as her principal place of residence. This interpretation of the language of the deed, however, makes the second sentence of the provision nugatory. If, as the defendants assert, the grantor intended to convey only a future interest that would vest upon the plaintiff's taking up residence on the property, he would not have included a provision to effectuate defeasance if she did not move in. If the plaintiff could take title only by occupying the premises, no act on the grantor's part would be necessary to terminate her interest if she failed to move in. Under the defendants' interpretation of the deed, the words "in the event that the releasee *does not use* the above described property" have no meaning. Thus, their interpretation is contrary to the rules of construction that require us to give meaning to each part of the deed whenever possible.

Absent indication of a contrary intent, the language in a deed will be construed using its ordinary and natural meaning. *Sweeney* v. *Landers, Frary & Clark,* supra, 578–79. Traditionally, words such as "upon condition that" indicate an estate subject to condition subsequent. *Oldfield* v. *Stoeco Homes, Inc.,* supra, 256. The grantor conveyed the property to the plaintiff "so long as and upon condition that" she use it as her principal residence. If she failed to do so, he had the right to take it away. This arrangement strongly resembles an estate in fee simple subject to a condition subsequent. Furthermore, "[a]s between conditions precedent and subsequent, the law favors conditions subsequent." *Lewis* v. *Lewis,* supra, 633; see also *United States* v. *Schaeffer,* 319 F.2d 907, 911 (9th Cir. 1963). Thus, in this case, any ambiguity supports construction of the deed as creating a condition subsequent.

Construing the deed as granting a fee simple subject to condition subsequent is also consistent with the intent of the grantor as derived from the facts found by the trial court. The trial court found that the grantor intended that the plaintiff have the property when he died. Furthermore, the grantor knew that the plaintiff held title to the land and that she never occupied the premises, yet he never chose to exercise his power of termination. These facts tend to establish his intent that the conveyance created an estate subject to defeasance for condition broken.

## II

The defendants next claim that even if a present estate was conveyed to the plaintiff, the grantor's power of termination was not personal to him, and the defendants, as trustees under the grantor's will, have the power to terminate the plaintiff's estate.

The future interest remaining in the grantor of a fee simple subject to a condition subsequent is the right

of entry for condition broken, also known as a power of termination. *Oldfield* v. *Stoeco Homes, Inc.,* supra, 255. Breach of the condition does not itself cause a forfeiture of the estate. *Nearing* v. *Bridgeport,* 137 Conn. 205, 207, 75 A.2d 505 (1950); *Chalker* v. *Chalker,* 1 Conn. 79, 86 (1814). Actual entry for breach of condition is required in order to effectuate defeasance. *Nearing* v. *Bridgeport,* supra, 207. In the present case, the grantor reserved a right of entry in case the plaintiff never occupied the property or ceased to occupy it. The grantor could exercise the power of termination by recording the affidavit attached to the deed. During his lifetime, the grantor did not exercise his power of termination. The issue presented is whether the grantor's heirs also have the right to exercise the power of termination. On this point, the salient language of the deed is: "In the event that the Releasee does not use or ceases to use the above described real property as her principal place of residence, the above described property shall automatically revert to Releasor or his heirs and assigns upon the recording *by Releasor* of the Affidavit attached hereto as Schedule B and it shall not be necessary for Releasor or his heirs and assigns to take any further action to effectuate the reverter." (Emphasis added.)

The grantor uses the phrase "Releasor and his heirs and assigns" twice, first when denoting to whom the property would revert and then when explaining that no action other than recordation of the affidavit was necessary to effectuate the reverter. He does not use this phrase, however, in specifying who has the power to terminate the plaintiff's interest. Rather, this provision states that "the above described property shall automatically revert . . . upon the recording *by Releasor* of the Affidavit." (Emphasis added.) The grantor's failure to include the term "and his heirs and

assigns" in specifying who holds the power of termination implies that he intended that the power of termination be personal to him. A plain reading of the deed compels this conclusion. The grantor could easily have drafted this provision to include his heirs and assigns, but he chose not to. "[U]nless the heir is named, he cannot re-enter, though the condition is breached; the estate does not inure to his benefit." *Daggett* v. *Fort Worth,* 177 S.W. 222, 223 (Tex. Civ. App. 1915). Thus, the defendants are unable to exercise the power of termination retained by the grantor.

Furthermore, as the trial court noted in the memorandum of decision, this interpretation is consistent with the evidence adduced at trial that the grantor was reluctant to delegate authority and that he intended that the plaintiff own the property after his death.

We conclude that the trial court's legal conclusions are correct and are supported by the facts. Because the grantor never exercised the power of termination during his lifetime, it was extinguished upon his death. The affidavits filed by the defendants in an attempt to terminate the plaintiff's interest in the land are ineffective. The plaintiff owns the property in fee simple absolute.

The judgment is affirmed.

In this opinion the other judges concurred.